**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| IN RE | |
| **CLARENCE LEONARD RULE** | **CASE NO. 09-52311** |
| **JO ELLEN RULE** | |
| | |
| **DANIEL McDERMOTT,** *United States Trustee* | **PLAINTIFF** |
| | |
| **V.** | **ADV. NO. 10-5020** |
| | |
| **CLARENCE LEONARD RULE** | **DEFENDANTS** |
| **JO ELLEN RULE** | |

### MEMORANDUM OPINION

This adversary proceeding arises out of a complaint filed by Plaintiff Daniel McDermott, United States Trustee, Region 8, against Defendants and Debtors Clarence Leonard Rule and Jo Ellen Rule. The complaint seeks the denial of Debtors' discharges under 11 U.S.C. § 727(a)(2) and (a)(4).

This court has subject matter jurisdiction under 28 U.S.C. §§ 157(a), 1334(a)-(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (J).

The parties introduced their evidence by production of joint exhibits (Doc. No. 63), joint stipulations of facts (Doc. No. 58), and trial briefs (Plaintiff's Trial Brief, Doc. No. 65; Defendants' Trial Brief, Doc. No. 64). A trial of the matter was held on October 26 and 27, 2010. Chapter 7 Trustee Phaedra Spradlin and the Rules testified on behalf of Plaintiff. The Rules also testified on their own behalf. The court admitted the joint exhibits, referred to herein as Exhibits 1 through 70. At the conclusion of the trial the parties were directed to tender simultaneous proposed findings of fact and conclusions of law. The simultaneous filings were made on February 22, 2011, after which the matter was deemed submitted.

The first issue presented is whether the Rules engaged in transfers with the intent to hinder, delay, or defraud creditors or the Chapter 7 Trustee. 11 U.S.C. § 727(a)(2). The second issue is whether the Rules concealed their ownership interests in Leonard Rule Builders, Inc., ALJ Building Co., and the Leonard Rule Builders, Inc. Profit-Sharing Plan and Trust, with the intent to hinder, delay or defraud a creditor or the Chapter 7 Trustee. 11 U.S.C. § 727(a)(2). The third issue presented is whether the Rules knowingly and fraudulently made false oaths on their Schedules, their Statement of Financial Affairs, and at their First Meeting of Creditors, when they failed to schedule or disclose their ownership interests in Leonard Rule Builders, ALJ Building, and the Profit Sharing Plan. 11 U.S.C. § 727(a)(4).

In order to prevail under 11 U.S.C. § 727, the plaintiff must prove the grounds to deny a debtor's discharge by a preponderance of the evidence. *Keeney v. Smith, (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000). The court, having carefully considered the testimony of the witnesses adduced at trial, evidence from the exhibits, arguments from the written trial briefs and the entire record, finds and concludes in this case the plaintiff has met his burden. For the reasons that follow, a discharge under Chapter 7 of the Bankruptcy Code is denied as to Debtors Clarence Leonard Rule and Jo Ellen Rule.

**FACTS**

*Background*

Mr. Rule has a GED and some college credits. (Transcript of Trial, day 1, p. 86; Transcript of Trial, day 2, p. 107). By reading books and viewing videotapes, Mr. Rule taught himself to build houses. (Transcript 1, p. 39). He also read books to educate himself on the creation and management of profit sharing plans and creating corporate entities. (Transcript 1, p.

2

39). Mr. Rule acted as his own attorney on various occasions by drafting multi-count complaints and extensive answers and counterclaims in state court lawsuits. (Transcript 1, pp. 125-128).

Mrs. Rule has a bachelor's degree in education and a master's degree in communications. (Transcript 1, p. 31).

Mr. Rule started building homes in the 1980s. (Transcript 1, pp. 83-85). In May 1991, Mr. Rule began building as a sole proprietor with Leonard Rule Builders. (Exhibit 44, p. 31).

In early 2004, the Rules were behind in paying a number of credit cards. (Transcript 1, pp. 4-5). The Rules stopped paying their credit cards in March or April 2004. (Transcript 1, pp. 87-88; Transcript 2, pp. 122-123). By late spring 2004, the Rules reached the credit limits of their credit cards. (Transcript 1, p. 87).

In March 2004, the Rules incorporated Leonard Rule Builders. (Stipulation 2). In that same month, the Rules granted Leonard Rule Builders a mortgage on their home at 4659 Laurelwood Drive, Lexington, Kentucky, and executed a promissory note promising to pay Leonard Rule Builders $125,000. (Exhibits 16-17; Transcript 1, pp. 35-36, 91). The Rules received no money from this transaction. (Transcript 2, pp. 114, 160).

Acting as the Board of Directors of Leonard Rule Builders, the Rules adopted the Profit Sharing Plan at a meeting held on March 15, 2004. (Stipulation 24; Exhibits 29-31). On March 30, 2004, Leonard Rule Builders granted the Profit Sharing Plan a mortgage on 680 Rolling Creek Lane. (Stipulation 28B; Exhibit 34). No note supports this mortgage. (Transcript 1, pp. 98-100).

The Rules transferred three properties – 680 Rolling Creek Lane, 2696 Red Leaf Drive, and 4316 Crescent Springs Court – all located in Lexington, to Leonard Rule Builders in

3

exchange for shares of stock.  (Exhibit 18; Stipulations 3-5).  Leonard Rule Builders never issued stock certificates to the Rules in exchange for these transfers.  (Transcript 2, p. 116).

By the end of June 2004, Citizens Commerce National Bank terminated the Rules' line of credit, (Transcript 2, p. 68), and Leonard Rule Builders ceased doing construction business. (Exhibit 67, pp. 4-5).

By the fall of 2005, creditors were obtaining arbitration awards and judgments against one or both of the Rules.  (Stipulation 36; Transcript 1, pp.14-15, 117-118, 120-126; Transcript 2, p. 41).  On November 3, 2005, Citizens Commerce sent the Rules a Notice of Default. (Transcript 1, pp. 125-126).

In late November 2005, the Rules sold their residence at 4659 Laurelwood Drive, and deposited the sale proceeds in the Profit Sharing Plan's account.  (Transcript 1, pp. 27-28, 62-63; Exhibit 32).  After the sale, the Rules moved to 680 Rolling Creek, which was held in the name of Leonard Rule Builders.  (Transcript 1, p. 16; Transcript 2, pp. 15-16).

Litigation continued against the Rules in 2006 and 2007.  (Transcript 1, pp. 12-13, 114-115; Transcript 2, pp. 11-12, 14-16, 39-41; Stipulation 33; Exhibit 62).  On February 15, 2007, First National Bank of Omaha obtained a judgment against the Rules, Leonard Rule Builders, and the Profit Sharing Plan, which, among other things, set aside the 680 Rolling Creek Lane transfer as a fraudulent transfer.  (Stipulation 35; Exhibit 54).

In the spring of 2008, MBNA garnished Mrs. Rule's bank account at Members Heritage Federal Credit Union.  (Transcript 1, pp. 13-14).   Mrs. Rule then opened a bank account at Farmers Bank.  (Transcript 1, p. 17).  She testified she did so because she did not want creditors garnishing her funds. (Transcript 1, pp. 17-18).

4

Before Mrs. Rule opened her bank account at Farmers Bank, she deposited her paycheck into the Leonard Rule Builders bank account and wrote personal checks out of this corporate business account. (Transcript 1, pp. 18-19). Again, she stated she did so because she did not want creditors to garnish her funds. (Transcript 1, pp. 18-19). The Rules extensively used the Leonard Rule Builders bank account at Republic Bank for personal expenses over a multi-year period. (Transcript 1, pp. 23-25, 54-60; Transcript 2, pp. 14-16; Exhibit 15; Stipulation 10).

*July 23, 2008, to July 22, 2009 – The year preceding the bankruptcy filing*

This pattern of activity continued during, July 23, 2008, through July 22, 2009, the year preceding the Rules' bankruptcy filing.

In September 2008, the Profit Sharing Plan purchased 137 Abigail Way, Nicholasville, Kentucky. (Exhibit 36; Transcript 1, p. 166). Earlier documentation indicated that Leonard Rule Builders, and not the Profit Sharing Plan, was to be the purchaser. (Exhibit 35).

Mr. Rule incorporated ALJ Building on October 6, 2008. (Stipulation 16; Transcript 1, p. 166). By this date, at least one creditor, First National Bank of Omaha, had obtained a judgment against Mr. Rule, Leonard Rule Builders, and the Profit Sharing Plan. (Exhibit 54).

In January 2009, Mr. Rule opened a bank account for ALJ Building at Republic Bank. This was ALJ Building's only bank account. (Transcript 2, p. 1; Exhibit 28).

Also in January 2009, the Profit Sharing Plan transferred $58,775.32 and $36,623.14 to ALJ Building. (Stipulation 19). Although Mr. Rule stated that these were loans, no notes exist. (Transcript 1, pp. 164-166, 171). From February 16, 2009, through June 5, 2009, Mr. Rule wrote two checks totaling $4,000.00 payable to him from the ALJ Building bank account and deposited the funds in the Leonard Rule Builders account. The Rules used this money, in part, for personal purposes. (Transcript 2, pp. 2-8, 23-25; Exhibit 28).

5

On or about June 17, 2009, Capital One issued a wage garnishment to Mrs. Rule's employer. (Stipulation 37; Transcript 1, pp. 16-17, 119).

On July 13, 2009, the Profit Sharing Plan transferred 137 Abigail Way, Nicholasville, KY, to ALJ Building. (Exhibit 37; Transcript 1, pp. 119, 168-169). No note or other consideration was exchanged for this transaction. (Transcript 1, pp. 169-170).

Also on July 13, 2009, the Profit Sharing Plan recorded a Land Acquisition and Construction Mortgage against 137 Abigail Way. (Exhibit 39). No notes supported this mortgage. (Transcript 1, p. 175).

*Post-petition actions*

The Rules filed a petition for relief under chapter 7 of the Bankruptcy Code on July 23, 2009. (Stipulation 38).

Trustee Spradlin conducted the First Meeting of Creditors on August 17, 2009. (Exhibit 67). The Rules did not provide Ms. Spradlin with all bank records prior to the First Meeting as required under this court's Standing Order. (Transcript 2, pp. 54). The Rules testified at the meeting that all the information on the bankruptcy petition was correct and that they listed all of their property. (Exhibit 67, p. 2).

Ms. Spradlin continued the First Meeting to September 16, 2009. She requested that the Rules provide the missing bank statements from the Rules' individual bank accounts at Farmers Bank, Republic Bank and Members Heritage, all ALJ Building and Leonard Rule Builders bank records for the last twelve months, and the Leonard Rule Builders tax return for 2006. (Exhibit 64, p. 2). The trustee requested the Rules provide these documents by August 30, 2009. *Id.*

Prior to the continued First Meeting, the Rules provided some, but not all of the requested documents. (Exhibit 68; Transcript 2, p. 55). The Rules provided the 2005, but not the 2006, tax

6

return for Leonard Rule Builders. The Rules did not provide the ALJ Building bank records. (Exhibit 68; Transcript 2, pp. 54-56).

The trustee conducted the continued First Meeting on September 16, 2009. At the conclusion of the continued meeting, the trustee issued a second written document request to the Rules. (Exhibit 64, p. 1). In this second request the trustee again asked for the bank records of ALJ Building and the 2006 tax return for Leonard Rule Builders. She also requested the 2007 and 2008 Leonard Rule Builders tax returns along with all documents regarding the Profit Sharing Plan. (Exhibit 64, p. 1). The Rules did not provide the 2006, 2007 and 2008 tax returns for Leonard Rule Builders because Mr. Rule had not prepared them. (Exhibit 69).

On October 19, 2009, Mr. Rule wrote a check for $5,000.00 payable to himself on the ALJ Building bank account. (Exhibit 28; Transcript 2, p. 25). This money was referred to as a loan to Mr. Rule, although no note exists. (Transcript 2, pp. 8-10). He deposited this money into the Leonard Rule Builders bank account and used it to pay the property taxes and monthly mortgage payment for the Rules' residence at 680 Rolling Creek. (Transcript 2, pp. 9-10). Mr. Rule withdrew $500.00 from ALJ Building on February 23, 2010, and $2,000.00 on June 15, 2010. (Exhibit 28). Mr. Rule testified that the $2,000.00 was a loan to him but he admitted there was no note supporting this loan. (Exhibit 28; Transcript 2, pp. 27-28).

On May 17, 2010, the trustee filed Adversary Proceeding No. 10-5050 against ALJ Building, Leonard Rule Builders and the Rules seeking to recover all the assets transferred by the Profit Sharing Plan to ALJ Building. On June 22, 2010, the court entered a default judgment against the Rules which avoided as constructively fraudulent two cash transfers in the amounts of $58,775.32 and $36,623.14, and the transfer of 137 Abigail Way from the Profit Sharing Plan to ALJ Building. (AP 10-5050, Doc. No. 8). The judgment also determined that all property of the

7

Profit Sharing Plan, all money in ALJ Building bank account and 137 Abigail Way were property of the Rules' bankruptcy estate. The Rules filed a Notice of Appeal. (AP 10-5050, Doc. No. 36). The Bankruptcy Appellate Panel dismissed the appeal on October 29, 2010, for non-prosecution. (AP 10-5050, Doc. No. 52).

*Use of the Profit Sharing Plan bank account*

From its inception in March 2004 through January 2009, the Rules used the Profit Sharing Plan's Republic Bank account as the primary holding location for their liquid assets. (Exhibits 32, 40-42). The Rules deposited $117,741.07 from the sale of their home at 4659 Laurelwood Drive into this account. (Transcript 1, pp. 27-28, 62-63; Exhibit 32). The handwritten "accounting" prepared by Mr. Rule in response to a request from Plaintiff, (Transcript 2, p. 129), reflects this deposit as a loan by the Rules to the Profit Sharing Plan, but no note exists. (Exhibit 32; Transcript 1, p. 109). The Rules also deposited into this account $6,000.00 from Mrs. Rule's annuity, (Transcript 1, pp. 63, 160-161), social security checks totaling $7,609.00, some of which may have included social security checks payable to Mr. Rule's daughter, (Transcript 1, pp. 151-152, 154-160), a $13,442.33 Leonard Rule Builders tax refund, (Transcript 1, pp. 73, 161-162), and a $35,000.00 check payable to Leonard Rule Builders in settlement of litigation with Citizens Commerce Bank. (Transcript 1, pp. 63, 73, 163; Exhibit 65). Regarding this last deposit, the Rules testified this deposit was a loan by Leonard Rule Builders to the Profit Sharing Plan. Transcript 1, p. 163-164; Transcript 2, p. 35-36). As with many other "loans" between the Rules and these entities, no note exists. *Id.*

During this same period, the Rules also used the Profit Sharing Plan bank account as a primary source of cash for personal and business expenses. Mr. Rule withdrew $9,900.00 from the Profit Sharing Plan and deposited it into the Leonard Rule Builders bank account as "loans."

8

No notes exist. (Transcript 1, pp. 104-106). Mr. Rule made a series of what he called "draws" totaling $60,600.00. The funds were deposited into the Leonard Rule Builders bank account and used by the Rules for business and personal expenses. (Transcript 1, pp. 130-132, 134-135, 138-151, 168; Exhibit 15). Mr. Rule also withdrew $37,000.00 from the Profit Sharing Plan to purchase 137 Abigail Way. (Transcript 1, pp. 166-168; Exhibit 36). Finally, Mr. Rule made two transfers, called loans by Mr. Rule, to ALJ Building totaling $95,398.46. (Transcript 1, pp. 164-166, 171-172).

No cash remained in the Profit Sharing Plan bank account as of January 2009 because of these transactions. (Transcript 1, pp. 173-174).

*Interests in corporate entities Leonard Rule Builders and ALJ Building*

Pursuant to the judgment entered in the Chapter 7 Trustee's adversary proceeding against ALJ Building, Leonard Rule Builders and the Rules, it is the law of the case that the assets of ALJ Building were property of the Rules, and accordingly, their bankruptcy estate. *See* AP No. 10-5050, Doc. No. 8. Furthermore, the factual record in this case independently demonstrates that all ownership interests in Leonard Rule Builders and ALJ Building belonged to the Rules.

The Rules were at all relevant times the sole incorporators, officers, directors, and the only authorized signatories on the corporate bank accounts for Leonard Rule Builders and ALJ Building. (Stipulations 1-2, 7-8, 11-12, 16-18, 19A, 20, 21; Transcript 1, p. 166).

The Rules contended that they returned their shares of Leonard Rule Builders to the corporation after the Fayette Circuit Court declared various transfers of real property interests fraudulent in 2007. Nevertheless, they held a shareholders' meeting on March 20, 2008. (Exhibit 11). The Rules also held annual meetings of the shareholders and directors and

9

executed shareholder consents for ALJ Building on January 1, 2009, and for Leonard Rule Builders on March 20, 2009. (Exhibits 12, 26-27).

The Rules contended that no shares of ALJ Building are outstanding, apparently in an effort to deny any ownership interest. The evidence, however, reflects the Rules held shareholder and director meetings for ALJ Building. (Exhibit 27). Mr. Rule testified at the First Meeting of Creditors that his daughters were the shareholders of ALJ Building. (Exhibit 67, p. 5). At trial he inconsistently testified his daughters never owned any shares of ALJ Building. (Transcript 1, p. 173).

In light of the corporate and financial records of these entities, and the Rules' trial testimony, the Rules' disclaimer of ownership interests in Leonard Rule Builders and ALJ Building is not credible. The record supports a finding that the Rules possessed complete ownership interests in Leonard Rule Builders and ALJ Building.

## **APPLICABLE LAW**

A bankruptcy discharge is grounded upon the public policy of freeing the honest, but unfortunate, debtor from the financial burdens of prepetition debts. *See e.g., Williams v. United States Fidelity & Guar., Co.*, 236 U.S. 549, 554-55, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Denial of a discharge is a harsh outcome; therefore the requirements of 11 U.S.C. § 727(a) are precise, encompassing only those individual debtors who are not honest and forthcoming about their assets and financial affairs. *See, e.g., Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006) ("The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor.").

> Indeed, the denial of a general discharge can work a serious deprivation upon a debtor, and there are many circumstances

> where a debtor's acts and omissions may have been inadvertent or otherwise excusable. Thus, the provisions of § 727(a) are to be construed liberally in favor of granting debtors the fresh financial start contemplated by the Bankruptcy Code and the Supreme Court, and construed strictly against parties seeking to deny the granting of a debtor's discharge. *See, among others, Meyers v. Internal Revenue Service (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). As the party seeking the denial of the debtors' general discharges, the United States trustee, as plaintiff, bears the burden of proving that the debtors are not entitled to discharges under § 727(a). *See* Fed. R. Bankr. P. 4005. The standard of proof for allegations under § 727(a) is by a preponderance of the evidence. *See Grogan*, 498 U.S. at 286-87, 11 S.Ct. 654.

*Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 901 (Bankr. W.D. Tenn. 2009).

> To find the requisite degree of fraudulent intent, the court must find the debtor knowingly intended to defraud the trustee, or engaged in such reckless behavior as to justify the finding of fraud. *In re Puente,* 49 B.R. at 969. The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied. 4 Collier on Bankruptcy ¶ 727.15[4] (1992).

*Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992).

### *11 U.S.C. § 727(a)(2) transfers*

The first issue presented is whether the Rules engaged in transfers with the intent to hinder, delay, or defraud creditors or the Chapter 7 Trustee. In order to prevail under 11 U.S.C. § 727(a)(2), Plaintiff must prove the Rules transferred, removed or concealed (or permitted the transfer, removal or concealment) property of the debtors within one year of bankruptcy, with the intent to hinder, delay, or defraud a creditor or the Chapter 7 Trustee. *Keeney*, 227 F.3d at 683.

The following transfers occurred within the year preceding the July 23, 2009, filing of the petition in bankruptcy:

− The Profit Sharing Plan transferred 137 Abigail Way to ALJ Building,

- The Profit Sharing Plan loaned a total of $95,398.46 to ALJ Building, and
- ALJ Building granted the Profit Sharing Plan a mortgage on 137 Abigail Way.

It is difficult to prove a defendant's actual intent to hinder, delay or defraud. In its place, a plaintiff may prove intent by demonstrating the existence of "badges of fraud" that establish fraudulent intent. *Solomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983); *United States v. Leggett*, 292 F.2d 423, 426 (6th Cir. 1961); *In re Draper*, 355 B.R. 607, 610 (Bankr. E.D. Ky. 2006). Once a plaintiff can prove one or more of the badges of fraud, this *prima facie* case shifts the burden of production to the defendant. *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002).

A number of badges of fraud are present which set forth a strong case of an intent to hinder, delay, or defraud creditors. *Leggett*, 292 F.2d at 427 ("a concurrence of badges will always make out a strong case"). Badges of fraud established in this adversary proceeding include:

- All the transfers occurring within the year preceding the July 23, 2009, filing of the petition in bankruptcy, lacked consideration;
- The Rules continued to use and enjoy the transferred assets and funds;
- The transfers were made by, and received by, entities wholly controlled by the Rules;
- The transfers occurred when creditors were actively pursuing the Rules and the Rules were under financial distress;
- The various "loans" lacked formality, giving rise to the inference that the stated consideration was fictitious; and
- The general chronology of transactions evidence concerted efforts on the part of the Rules to hinder, delay, or defraud creditors.

The Rules offer no credible explanations to overcome these badges of fraud and have failed to present evidence sufficient to rebut the United States Trustee's case; a case which is sufficient to deny the Rules a discharge in bankruptcy.

*11 U.S.C. § 727(a)(2) concealment*

The second issue is whether the Rules concealed their ownership interests in Leonard Rule Builders, ALJ Building and the Profit-Sharing Plan with the intent to hinder, delay or defraud a creditor or the Chapter 7 Trustee. Concealment under 11 U.S.C. § 727(a)(2) "includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known." *In re Swegan*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008). The failure to schedule an asset – in addition to being a false oath – can also constitute concealment. *In re Ingle*, 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987) (failure to schedule a sixteen foot boat is concealment).

The Rules failed to list their interests in Leonard Rule Builders and ALJ Building on their Schedule B. Schedule B, item 13 requires disclosure of "Stock and interests in incorporated and unincorporated businesses. Itemize." (Exhibit 44). The Rules had an ownership interest in Leonard Rule Builders and ALJ Building.[1]

The fact that the Rules mentioned Leonard Rule Builders and ALJ Building in response to Question 18 of the Statement of Financial Affairs, (Exhibit 44), is not the same as disclosing these assets. Their responses in the Statement of Financial Affairs stated inaccurately that these businesses ended operations in July 2009. Combining the omission on Schedule B and the misleading statement in the Statement of Financial Affairs suggests erroneously that Leonard Rule Builders and ALJ Building are defunct corporate entities having no assets and conducting no business activities of any nature. Taking all of the evidence as a whole, the record supports the conclusion that the Rules concealed the true extent of their ownership interests in Leonard Rule Builders and ALJ Building.

---

[1] Whether the Rules are stockholders is a question of fact, and the mere absence of stock certificates is not determinative. *In re Penfield Distilling Co.*, 131 F.2d 694, 698 (6th Cir. 1942).

Whether the Rules concealed their interest in the Profit Sharing Plan is a closer issue. Schedule B, Item 12 requires disclosure of "Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars." The Rules disclosed on item 12, "Principal Financial Group, Profit Sharing Plan (ERISA Qualified Pension Plans)." (Exhibit 44).

The record supports the conclusion that the Rules also concealed the true nature of the Profit Sharing Plan by declaring it "ERISA Qualified." The evidence is undisputed that the Rules used the Profit Sharing Plan for personal expenditures, and caused the Profit Sharing Plan to engage in numerous transfers with other entities. These acts violate ERISA law, *see* 29 U.S.C. 1106 (prohibited transactions), and the express terms of the Trust agreement governing the Profit Sharing Plan. (Exhibit 29, pp. 69-71).

*11 U.S.C. § 727(a)(4) false oath or account*

The third issue presented is whether the Rules knowingly and fraudulently made false oaths on their Schedules, their Statement of Financial Affairs, and at their First Meeting of Creditors, when they failed to schedule or disclose their ownership interests in Leonard Rule Builders, ALJ Building, and the Profit Sharing Plan. In order to deny a discharge under 11 U.S.C. § 727(a)(4), a plaintiff must demonstrate: (1) the debtors made statements under oath; (2) the statements were false; (3) the debtors knew the statements were false; (4) the debtors made the statements with fraudulent intent; and (5) the statements related materially to the bankruptcy case. *Keeney*, 227 F.3d at 685. Whether the debtors made a false oath under 11 U.S.C. § 727(a)(4) is a question of fact. *Id.*

The duty imposed by the Bankruptcy Code to disclose all assets is clear. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002); *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-208 (5th Cir. 1999) ("importance of this disclosure duty cannot be overemphasized"). One

court in this circuit has stated "debtors have a 'paramount duty' and a 'strict obligation' to truthfully, accurately, and completely answer questions in their schedules and statement of financial affairs, and debtors must complete their schedules with 'candor, accuracy, and integrity.'" *In re Summers*, 320 B.R. 630, 642 (Bankr. E.D. Mich. 2005) (quoting *In re Cutler*, 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003)).  The Rules have not met their paramount duty.

The Rules made oaths under penalty of perjury when signing the Schedules and the Statement of Financial Affairs, and while testifying at the Meeting of Creditors.  They failed to schedule any interests in Leonard Rule Builders, ALJ Building and the Profit Sharing Plan.  The Rules also falsely stated in response to Question 18 of the Statement of Financial Affairs that Leonard Rule Builders and ALJ Building ended their business in July 2009.

The testimony and evidence of record show the Rules were well aware of their holdings and exercised control over Leonard Rule Builders, ALJ Building and the Profit Sharing Plan.

Because debtors rarely admit fraudulent intent, fraudulent intent may be inferred from circumstantial evidence or from the debtors' course of conduct.  *In re Hamo*, 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999).  A pattern of multiple false statements and half truths violates the letter and spirit of the law, *Corning Vitro Corporation v. Shah*, 169 B.R. 17, 20 (Bankr. E.D.N.Y. 1994), and is sufficient to warrant an inference of an intent to deceive.  *Id.* at 21.  In numerous instances the evidence shows the Rules making false statements and providing half truths in relation to their business transactions and assets.

These omissions and half truths were material because they bore a relationship to the Rules' business transactions or estate, or concerned the discovery of assets, business dealings, or the existence and disposition of their property.  *Keeney*, 227 F.3d. at 686.  The record is replete with evidence that the Rules knowingly and fraudulently made false oaths in connection with

15

their bankruptcy case and when taken together are sufficient to warrant denial of a discharge under Chapter 7 of the Bankruptcy Code.

This constitutes the court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. A separate order of judgment will enter in accordance with this memorandum.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
***The affixing of this Court's electronic seal below is proof this document
has been signed by the Judge and electronically entered by the Clerk in the
official record of this case.***



**Signed By:**
*<u>Joseph M. Scott, Jr.</u>*
**Bankruptcy Judge
Dated: Monday, March 07, 2011
(jms)**